UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                      Case Number 02-20016

v.                                       Honorable David M. Lawson

JAMES HOWARD LAUGHTON,

        Defendant.

_____/

### ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

This matter is before the Court on the defendant's motion to suppress evidence filed on January 6, 2006. The motion concerns evidence seized in a warrantless search of a motor vehicle that occurred on April 20, 2002, which evidence supports the charge contained in court four of the superseding indictment in this case. The government contends that the search can be justified either by the defendant's consent to search or as a search incident to a lawful arrest. After considering the evidence offered at the evidentiary hearings held on the motion and the parties' submissions, the Court concludes that both of the government's arguments are untenable, the search violated the Fourth Amendment, and the evidence must be suppressed.

I.

A brief recapitulation of this case is appropriate here. On April 10, 2002, the defendant was charged in a six-count indictment with various drug and weapons offenses, not including the charge contained in the present count four, which is the object of the motion to suppress. The drug offenses concerned trafficking in methamphetamine. Counts one through four of the original indictment were based on controlled buys conducted by the police with the assistance of a confidential informant named Thomas Pell. Based on these controlled buys, Deputy Sheriff Scott Clarke swore out an

affidavit for a warrant to search the defendant's home. The warrant was issued and a search of the defendant's home was conducted. Counts five and six were based on items found during the search.

Unfortunately for the government, Deputy Clarke's affidavit was poorly drafted. On June 18, 2002, the defendant filed a motion to suppress the evidence obtained in the search. On August 29, 2002, this Court held that the warrant lacked probable cause. However, the Court found that the officers conducting the search acted in good faith in relying on the warrant, saving the evidence from the application of the exclusionary rule. The case proceeded to trial; the defendant was found not guilty on counts one and two and guilty on counts three through six.

On appeal, the defendant challenged this Court's application of the good faith exception to the exclusionary rule. On May 17, 2005, the Sixth Circuit reversed, holding that "[n]o reasonable officer could have believed that the affidavit was not so lacking in indicia of probable cause as to be reliable." *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005). The court of appeals reversed the judgment of conviction on all counts and remanded the case "for further proceedings consistent with this opinion." *Id.* at 752.

The government now seeks to retry the defendant but admits that it cannot meet its burden on counts five and six of the original indictment without the evidence from the search (including some drugs and a firearm), which must be suppressed according to the court of appeals' decision. Counts three and four of the original indictment remain. However, on November 30, 2005, the grand jury returned a superseding indictment. Counts three and four from the first indictment are renumbered as counts one and two, and the indictment contains two additional charges. New count three alleges that the defendant violated 18 U.S.C. § 922(g)(1) on November 7, 2001 by possessing a firearm while being a felon. New count four alleges that the defendant violated 21 U.S.C. § 844(a)

on April 20, 2002 by possessing methamphetamine after having been convicted of two drug offenses. This last count arises from a search of the defendant's vehicle by Michigan State Police Trooper William Arndt and his partner, Trooper G. Hubers, at the scene of a minor automobile accident on the April 2002 date.

Testimony was taken at the hearings on the suppression motion on February 21 and March 23, 2006; both Trooper Arndt and the defendant testified. Mr. Laughton testified that he was in an automobile accident around 5:30 p.m. on the day of the incident, which he thought was April 19, 2002. He was driving a GMC Jimmy that he had just purchased three or four days earlier from a woman in Flint. He had gone to a secretary of state office the day before the accident to transfer the title and license plate. When the police arrived at the scene about thirty minutes after the accident, the defendant was standing on the shoulder of the road with the driver of the other car. The Jimmy was in a ditch about six to eight feet deep and twelve feet from the road. Laughton denied being under the influence of drugs or alcohol at the time of the accident.

When Trooper Arndt and his partner arrived at the scene, the defendant gave them his driver's license. The defendant states the officers asked him if he had been drinking, which he denied, and they asked him for other documents, including his vehicle registration and proof of insurance. The defendant testified that these documents were in the car's glove box, a fact that remains uncontradicted on this record. However, the officers would not let him go down into the ditch to get the documents. Instead, Trooper Arndt's partner went to get them. Trooper Arndt put the defendant in the police vehicle while his partner went down to the defendant's car to look for the documents. The defendant was not handcuffed, but he claims he was locked in the car. The

defendant denies giving consent for the officers to search his car; in fact, he claims he was not even asked.

The defendant testified that he could see Trooper Arndt's partner taking items out of his car and putting them on the roof. The officer spent about five minutes looking in his car, then he waived at Trooper Arndt. At that point, Trooper Arndt took the defendant out of the police car, placed him under arrest, handcuffed him, and put him back in the police car. The defendant asked why he was being arrested. He testified that Trooper Arndt told him that his partner must have found something illegal. At some point while he was in the police car, the defendant testified that he was given a preliminary breath test (PBT), and the results were negative. He does not remember if he was handcuffed before or after he was administered the test. The defendant testified that the officers did not give him a ticket for not having a registration or proof of insurance.

A tow truck came to pull the Jimmy from the ditch. Laughton explained that he had called for the tow before the police arrived. The defendant was in jail for 18 hours before he was released. When he returned to the vehicle, the documents the police had requested were still in the glove box of the Jimmy. The defendant does not know where those documents are now, and they were not produced at the motion hearings. Laughton says that he believes his lawyer in a prior state court case may have them. While the defendant was in jail, he claims the officers asked him to sign a form consenting to a search of his vehicle so the police could go back to seize a bulletproof vest they had seen in the car that they had not seized at the scene of the accident. He refused.

Two days after he was released, the defendant surrendered after being indicted in this case. He has been in custody since that time. He left his car in front of the courthouse.

Trooper William Arndt testified for the government. He said that when he and his partner arrived at the accident scene, the defendant and the other driver were standing by the side of the road, and the Jimmy was off the road and down in the ditch. Arndt said that his preliminary check on the vehicle revealed that the Jimmy was not registered to the defendant but had plates on it that were registered to a different car owned by the defendant. Arndt then asked the defendant for paperwork proving ownership of the vehicle and insurance, but his inquiries were met by inconsistent answers to questions about where the defendant's paperwork was. First, he stated he had no papers. Then he explained that he had gone to the secretary of state's office to effectuate the transfer. Trooper Arndt found these statements to be inconsistent, and he testified that he arrested the defendant for having no proof of insurance. However, Arndt stated he did not handcuff the defendant or put him in the police vehicle right away. Rather, the defendant continued to stand on the shoulder of the road. Trooper Arndt claims the defendant was arrested first, and the search was conducted afterwards with consent.

As for the consent, Arndt testified on direct examination he asked the defendant, "Do you mind if I take a look in the vehicle?" He claims the defendant said that he could. Trooper Arndt then testified a few minutes later that he asked the defendant if he had any weapons in the vehicle, and the defendant denied having any weapons and offered to allow the officers to conduct a search, stating, "You can look if you want to." Arndt said he and his partner went down into the ditch. Arndt testified that he saw a six pack of beer in the vehicle, so he went back up to the road to talk to the defendant, leaving his partner to conduct the search. Arndt then testified that the search was conducted incident to the arrest for no insurance and also with the defendant's consent. Arndt's partner found a bulletproof vest and a Harley Davidson tin that contained methamphetamine. The

-5-

methamphetamine was seized at that time, but the vest was not. Trooper Arndt stated the defendant was not given a breath test, even though one was available, because the defendant did not appear intoxicated.

On cross examination, Arndt testified that the defendant was given a citation for not having proof of insurance. However, Arndt also testified that he told the defendant, "Based on what I found from the vehicle, if anything was found, if any paperwork was found, he *could be* issued a citation and released or arrested." This explanation suggests that the defendant had not been arrested yet at the time of the search, in direct contradiction to Trooper Arndt's previous testimony that the search was conducted after the arrest. Arndt claims the defendant volunteered to let the officers search his car, and that the defendant was not handcuffed at the time. Trooper Arndt stated that the defendant was handcuffed after the beer was found in his car. The officer does not recall visiting the jail to ask the defendant to sign a consent form.

Conrad Henke, an investigator with the Federal Defender Office, testified for the defendant. He had conducted a review of the Michigan secretary of state's records for the defendant's car, a 1988 GMC Jimmy with vehicle identification number (VIN) 1GKCT18R9J0501617. The records show the vehicle was purchased by the defendant on April 16, 2002, and that the defendant went to the secretary of state's office on April 19, 2002 to transfer the title. April 19 was a Friday. Secretary of state office personnel told Mr. Henke that the transfer likely would not be entered into the computer until the following Monday. The incident in this case occurred on Saturday, April 20.

II.

The defendant contends that the search of his vehicle violated the Fourth Amendment. The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Supreme Court has consistently held that in the criminal context, warrantless searches are *per se* unreasonable unless they fall within a few specifically established and well-delineated exceptions. *Payton v. New York*, 445 U.S. 573, 585-86 (1980); *Mincey v. Arizona*, 437 U.S. 385, 390 (1978); *Katz v. United States*, 389 U.S. 347, 357 (1967). Those exceptions include the seizure of a fleeing suspect, *Warden v. Hayden*, 387 U.S. 294, 298-300 (1967), prevention of the imminent destruction of evidence, *Schmerber v. California*, 384 U.S. 757, 770- 71 (1966), searches incident to a lawful arrest, *Chimel v. California*, 395 U.S. 752, 762-63 (1969), and consent, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

### A. Consent

"While the Fourth Amendment protects citizens against unreasonable searches and seizures, a search is not unreasonable if a person with a privacy interest in the item to be searched gives free and voluntary consent." *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998); *see also Schneckloth*, 412 U.S. at 219; *United States v. Kelly*, 913 F.2d 261, 265 (6th Cir. 1990). "The government bears the burden of proving through 'clear and positive testimony' that the consent to search was given voluntarily." *Ivy*, 165 F.3d at 402; *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992) (holding that "[c]onsent must be proved by clear and positive testimony and must be unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion"). To meet this burden, the government must demonstrate that consent was "freely and voluntarily given" without influence of duress, coercion, or mere submission to authority. *United*

*States v. Van Shutters*, 163 F.3d 331, 335 (6th Cir. 1998). Proof must consist of "clear and positive testimony." *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000).

Proof of the consent in this record consists entirely of the testimony of Trooper Arndt, which is directly contradicted by the defendant's own testimony. The government argues that if the defendant gave verbal consent, it has established sufficient proof to justify the search since consent does not have to be corroborated. The consent in this case, the government points out, mirrors the dialog that occurred in *United States v. Erwin*, 155 F.3d 818 (6th Cir. 1998), where the court of appeals found consent to have been established. That is all true enough, but the more basic question in this case is whether it has been proven that the defendant gave permission for a Michigan State police officer to search his car.

Trooper Arndt's testimony is blemished by some inconsistencies. In describing his solicitation of the defendant for permission to search the car, Arndt first said, "I asked Mr. Laughton do you mind if I take a look in the vehicle? He said I could." Tr. of hearing at 45 (2/21/06). Later, he described the encounter differently; he claimed consent came in response to a question about weapons. "I asked him, Hey, you got anything in your vehicle? Guns, knives, bombs, bottle rockets, anything like that? He said: No, you can look if you want to." Tr. of hearing at 46 (2/21/06). These differences are not fatal to Arndt's credibility by themselves. However, the two statements suggest different objectives, the first implying a search that might be limited to the registration papers and the second indicating a broader exploration.

Another consideration is the unlikelihood that the defendant, knowing that he had an unconcealed tin of methamphetamine and a bulletproof vest in plain view in the back of his vehicle, would readily grant permission to a police officer to rummage through the car's passenger

-8-

compartment. Of course, that factor alone is neither controlling nor dispositive. However, it is a fact that must be weighed as part of the totality of the circumstances. Moreover, the defendant does not say that he refused permission; he says that he was never asked. In all events, the defendant's testimony contradicts Arndt's.

The government argues that the Court should reject the defendant's testimony and accept Arndt's because the defendant is a felon with a stake in the outcome. Certainly, issues of bias and character for truthfulness are relevant considerations in weighing testimony. *See* Fed. R. Evid. 401, 609; *United States v. Jackson-Randolph*, 282 F.3d 369, 383 (6th Cir. 2002) (noting that "[b]ias is always relevant in assessing a witness's credibility") (citing *United States v. Abel*, 469 U.S. 45, 52 (1984)). However, the Supreme Court recently observed that police officers may be subject to personal liability, and therefore they may have a motive beyond the application of the exclusionary rule to shade their testimony or prevaricate to avoid a finding of a constitutional violation. In *Hudson v. Michigan*, __ U.S. __, 2006 WL 1640577, *9 (June 15, 2006), the Court held that the exclusionary rule does not apply to violations of the knock-and-announce rule and noted that the threat of civil liability affects the behavior of law enforcement officers:

> As far as we know, civil liability is an effective deterrent here, as we have assumed it is in other contexts. *See, e.g., Correctional Services Corp. v. Malesko,* 534 U.S. 61, 70 (2001) ("[T]he threat of litigation and liability will adequately deter federal officers for *Bivens* purposes no matter that they may enjoy qualified immunity" (as violators of knock-and-announce do not)); see also *Nix v. Williams,* 467 U.S. 431, 446 (1984).

*Hudson*, 2006 WL 1640577, at *9. The Court stated that the availability of attorney fees in such suits makes them more likely to be filed. "Citizens and lawyers are much more willing to seek relief in the courts for police misconduct." *Hudson*, 2006 WL 1640577, at *8. Given these competing motives, this Court finds that neither witness deserves an advantage in the credibility contest.

-9-

If both versions of the events of April 20, 2002 are equally plausible, the government has not prevailed under any standard of proof. *See Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 622 (1993) (observing that "[t]he burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence"'") (quoting *In re Winship*, 397 U.S. 358, 371-72 (1970) (Harlan, J., concurring)). The Court believes that the record does not contain "clear and positive testimony" that consent to search the vehicle was given in this case.

B. Search Incident to Arrest

In *Chimel v. California*, the Supreme Court held that when a person is arrested in his home, the arresting officers may search the area immediately surrounding him to remove weapons and prevent the defendant from destroying evidence. The Court reasoned:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.

*Chimel*, 395 U.S. at 762-63.

In *New York v. Belton*, 453 U.S. 454 (1981), the Court expanded the search incident to arrest concept to allow officers to search the entire passenger compartment of the vehicle of someone who has been arrested in the car. Belton was pulled over for speeding. When the officer saw a small quantity of marijuana on the floor of Belton's car, he arrested Belton for possession of marijuana. The officer then searched the passenger compartment of the car and, inside the pocket of a jacket

on the back seat, found cocaine. The Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460.

In *Northrop v. Trippett*, 265 F.3d 372 (6th Cir. 2001), the Sixth Circuit applied *Belton* to hold that "the right to search an item incident to arrest exists even if that item is no longer accessible to the defendant at the time of the search. So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest." *Northrop*, 265 F.3d at 379.

The incident to arrest concept was expanded even further in *Thornton v. United States*, 541 U.S. 615 (2004), to allow officers to search a car if a "recent occupant" was arrested:

> In all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle. An officer may search a suspect's vehicle under *Belton* only if the suspect is arrested. A custodial arrest is fluid and "the danger to the police officer flows from *the fact of the arrest*, and its attendant proximity, stress, and uncertainty," *Robinson*, *supra*, 414 U.S. at 234-35, and n.5 (emphasis added) . . . The stress is no less merely because the arrestee exited his car before the officer initiated contact, nor is an arrestee less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of, but still in control of, the vehicle. In either case, the officer faces a highly volatile situation. It would make little sense to apply two different rules to what is, at bottom, the same situation. . . . [A]n arrestee's status as a "recent occupant" may turn on his temporal or spatial relationship to the car at the time of the arrest and search. . . . Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers *to ensure their safety and to preserve evidence* by searching the entire passenger compartment. . . . So long as an arrestee is the sort of "recent occupant" of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest.

*Thornton*, 541 U.S. at 621-24 (emphasis added).

The government contends that the vehicle search in this case was reasonable because the defendant was arrested for having no vehicle registration and he was a "recent occupant" of the

Jimmy. With respect to the latter proposition, there is little Sixth Circuit guidance on the question of when an arrestee remains a recent occupant of a motor vehicle. The only published decision by the Sixth Circuit discussing *Thornton* is *United States v. Herndon*, 393 F.3d 665 (6th Cir. 2005). In that case, the police saw the defendant driving into a car wash. They checked the license plates and discovered that the vehicle registration had expired a couple of years previously. They approached the defendant, who was standing about five feet away from the open car door. The opinion does not report how much time had passed from when the defendant was in the car to when he was arrested. The officers asked to see his driver's license, and he stated he did not have one. They arrested the defendant and conducted a search of the vehicle incident to arrest. The Sixth Circuit upheld the search, holding that the facts were virtually indistinguishable from *Thornton*. In an unpublished opinion, one court of appeals panel stated that although physical proximity to the vehicle is a factor in making the determination, "[t]hat the vehicle was outside the defendant's 'grab area' after he was arrested and handcuffed does not require suppression of the evidence found upon entry of the vehicle." *United States v. Jones*, 155 Fed. Appx. 204, 208 (6th Cir. 2005) (unpublished).

One commentator has offered a four-factor test by which to assess an arrestee's status as a "recent occupant" of a vehicle:

> (1) Was the arrestee in a vehicle at some point prior to arrest?; (2) Did the officers see the arrestee inside the vehicle?; (3) Did the arrest take place in the vicinity of the vehicle?; and (4) In the time period between when the officers saw the arrestee inside, and the arrest itself, were the officers both with the arrestee and conducting investigatory functions for the entire period of time?

Dane C. Ball, Thornton v. United States: *Blurring* Belton's *Bright Line Rule Spells Disaster for Lower Courts and the Fourth Amendment*, 35 Sw. U. L. Rev. 1, 33 (2005) (footnotes omitted). The

author appropriated this test from *United States v. Edwards*, 2004 WL 1534173 (D. Kan. June 21, 2004) (unpublished). In that case, police officers observed the defendant in a parked car. Based on their observations, they concluded the defendant was under the influence of some substance. When the defendant drove away, the officers followed him to his house, where he parked and exited the car. The officers approached him and asked him to cross the street so they could give him a sobriety test. The defendant agreed and walked across the street with them, about 40 feet from the defendant's car. The defendant failed the test, and he was arrested. The officers searched the car incident to the arrest, which occurred about fifteen minutes after they initiated contact with him. They found drugs and guns, which the defendant sought to suppress by arguing that the search could not qualify as a search incident to his arrest due to the time that had passed and the distance from the car. The trial court upheld the search. The court stated forty feet was not too far, without explaining. The court also held that fifteen minutes was not too long. "[G]iven the 15-minute time span between the officers' initial contact and defendant's arrest, he was still a 'recent occupant.'" *Id.* at *5.

The Court finds this test useful because it remains faithful to the relevant considerations discussed in *Thornton* – time and space – and it focuses the inquiry in a practical way. The factors, however, must be viewed through the lens of prior precedents that sanction searches incident to arrest because of the need to prevent destruction of evidence and promote officer safety. In this case, the defendant admitted that he had been driving the Jimmy before the accident. However, there is no evidence that the officers ever saw the defendant in the vehicle. In fact, the Jimmy had been in a ditch several feet off of and below the roadway, and the defendant was standing on the side of the road when the officers arrived. According to the uncontested facts, the defendant had not

been near the vehicle for at least thirty minutes by the time the officers even arrived at the scene. The search occurred well after that. The arrest, according to Trooper Arndt, took place in the back of the police car or on the shoulder of the road, depending on which version of his testimony is accepted. The Court believes, therefore, that the arrest was not within the vicinity of the Jimmy itself. Finally, Trooper Arndt testified that he did not remain with the defendant even after he was "arrested" for not having a vehicle registration, but rather he left the defendant unrestrained at the side of the road and joined his partner in the search before returning to the defendant at the roadway. These factors impel the Court to conclude that the vehicle search cannot be justified as incident to the arrest of a "recent occupant" of the Jimmy under *Thornton*, nor can it pass muster under the rationale of *Chimel* or *Belton*. The officers never saw the defendant in the vehicle, and there is no basis to conclude that the historical justifications for such warrantless arrests – ensuring officer safety and preventing the destruction of evidence, *Knowles v. Iowa*, 525 U.S. 113, 116 (1998) (noting that "the two historical rationales for the 'search incident to arrest' exception [are]: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial") – are present in this case.

     Another problem with the government's argument is the claim that Laughton was actually under arrest when the search was commenced. Trooper Arndt's testimony was confusing on this point. First, he testified that he arrested the defendant for having no insurance, then the defendant consented to the search, then the search was conducted. However, a short time later, Trooper Arndt testified that he told the defendant that the results of a search of the vehicle would determine whether the defendant would be arrested or not. He testified that he told the defendant "based on what I found from the vehicle, if anything was found, if any paperwork was found, he could be issued a

-14-

citation and released or arrested." Tr. of hearing at 53 (2/21/06) (emphasis added). Trooper Arndt's second version of the events of that day reflect the circumstances recently described by the District of Columbia court of appeals:

> The question before the court is whether the exception to the warrant requirement under the Fourth Amendment for a search of the passenger compartment of a car incident to a lawful custodial arrest under *New York v. Belton*, 453 U.S. 454, 460 (1981), applies to a search incident to the possibility of an imminent arrest. We hold that it does not. To come within the exception, the warrantless search cannot precede a custodial arrest; otherwise, neither of the Supreme Court's two historical rationales for the exception would apply. *See Knowles v. Iowa*, 525 U.S. 113, 116-117 (1998). Consequently, although the police had probable cause to arrest Ronald Powell for a misdemeanor committed in their presence, because they instead searched a nearby car before informing Powell that he was under arrest or restraining his movement in a manner that would lead a reasonable person in his position to believe he was under arrest, the search was unlawful.

*United States v. Powell*, __ F.3d __, __, 2006 WL 1715683 at *1 (D.C. Cir. June 23, 2006).

In *Knowles v. Iowa*, the Supreme Court held that an actual arrest, as opposed to the issuance of a summons or citation, is required before an incidental search can be justified. *Knowles*, 525 U.S. at 114 (holding: "An Iowa police officer stopped petitioner Knowles for speeding, but issued him a citation rather than arresting him. The question presented is whether such a procedure authorizes the officer, consistently with the Fourth Amendment, to conduct a full search of the car. We answer this question 'no.'"). Under the present Fourth Amendment jurisprudence, the arrest must precede the search. As with the matter of consent, the Court likewise finds that the government has not established by "clear and positive testimony" that the warrantless search can be justified as a search incident to the arrest of a recent occupant of a motor vehicle in this case.

### III.

For the reasons explained above, the Court concludes that the search of the defendant's vehicle on April 20, 2002 was unreasonable under the Fourth Amendment because no warrant was

obtained and the government has not established that any of the accepted exceptions to the warrant requirement exist in this case.

Accordingly, it is **ORDERED** that the defendant's motion to suppress evidence [dkt # 88] is **GRANTED**.

It is further **ORDERED** that items seized from the defendant's vehicle at the scene of the accident on April 20, 2002 may not be introduced in evidence at the defendant's trial.

                                          s/David M. Lawson  
                                          DAVID M. LAWSON  
                                          United States District Judge

Dated: June 26, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 26, 2006.

                              s/Tracy A. Jacobs  
                              TRACY A. JACOBS